# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNAZACH SOFTWARE, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>EXELON CORPORATION, a Pennsylvania Corporation, and PSEG NUCLEAR LLC, a Delaware Limited Liability Company,<br><br>Defendant. | 07cv5034<br>JUDGE KOCORAS<br>MAG. JUDGE VALDEZ<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, AnnaZach Software, Inc., a Delaware corporation, by and through its attorneys, MOMKUS McCLUSKEY MONROE MARSH & SPYRATOS, LLC, and complaining of the Defendant, Exelon Corporation, a Pennsylvania Corporation, and PSEG Nuclear LLC, a Delaware Limited Liability Company, states as follows:

### JURISDICTION AND VENUE

1. This action is brought, in part, under the Federal Copyright Act of 1976, as amended, (17 U.S.C. § 101 *et seq.*). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

2. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

### PARTIES

3. Plaintiff AnnaZach Software, Inc. is a Delaware Corporation whose principal place of business is in Glen Allen, Virginia. Plaintiff also operates an office in Naperville, Illinois. Plaintiff is primarily engaged in the business of developing computer software.

1

4. Defendant Exelon Corporation ("Exelon") is a Pennsylvania corporation whose principal place of business is in Chicago, Illinois. Exelon is primarily engaged in business as an electric utility. Additionally, Exelon operates the Joliet Data Center (defined *infra*), in Joliet, Illinois, which performs an essential function directly relating to Plaintiff's claims, as described in more detail, *infra*.

5. Defendant PSEG Nuclear, LLC ("PSEG Nuclear") is a Delaware limited liability company. PSEG Nuclear is primarily engaged in the business of operating the Salem (the "Salem Plant") and Hope Creek (the "Hope Creek Plant") Nuclear Generating Stations in Lower Alloways Creek, New Jersey, and is a part owner of the Peach Bottom Nuclear Generating Station in Delta, Pennsylvania. On information and belief, PSEG Nuclear is a wholly-owned subsidiary of PSEG Power LLC, which is in turn a wholly-owned subsidiary of Public Service Enterprise Group Incorporated ("PSEG Parent").

## BACKGROUND

### The Software

6. In or around the year 2000, Plaintiff created a customized computer program and relational database structure that became a custom security software application for use by Exelon in inprocessing and badging personnel for entry into Exelon nuclear plants (the "Software").

7. At all times relevant to this Complaint, Plaintiff had a valid and enforceable copyright in the Software, within the meaning of the Copyright Act of 1976 (as amended), 17 U.S.C. § 101 *et seq.* (the "Copyright Act"): the Software is an original work of authorship (a literary work originally authored by Plaintiff); fixed in a tangible medium of expression (the source code and relational database architecture of the Software is printed on paper and stored in

electronic format); from which the work can be perceived, reproduced, and otherwise communicated. *See* 17 U.S.C. § 102.

8. Plaintiff received a registration for its claim of copyright in the Software from the United States Copyright Office, effective May 21, 2007. An official Certificate of Registration of Plaintiff's copyright in the Software, under the Seal of the U.S. Copyright Office, is attached hereto as ***Exhibit A***.

9. In consideration for Plaintiff's software development services and the right to use Plaintiff's Software, Exelon agreed to both pay Plaintiff certain sums of money and comply with the terms of a license agreement (the "License Agreement"). A true and correct copy of the License Agreement is attached hereto as ***Exhibit B***. The License Agreement was served upon Exelon before it began using the Software.

10. The License Agreement provides Exelon with a "non-exclusive perpetual site license for the [Software] program at Exelon Corporation." ***Ex. B***, ¶ 1.

11. The License Agreement expressly retains ownership of the Software and all copyright in the Software to Plaintiff (***Ex. B***, ¶ 2) and prohibits Exelon from renting, leasing, or transferring the Software (***Ex. B***, ¶ 3).

12. Exelon accepted and ratified the License Agreement by: (a) accepting delivery of the Software; (b) accepting additional services from Plaintiff pertaining to the Software such as installation, maintenance, and support; and (c) paying Plaintiff for the Software and related services.

13. The License Agreement was a material part of the agreement between Plaintiff and Exelon, and Plaintiff would not have provided the Software and related services to Exelon if Exelon had not agreed to the License Agreement.

3

14. Exelon continued to use the Software at all times relevant to this Complaint, and indeed continues to use the Software as of the date of this Complaint.

### The PSEG Deal

15. On or about December 20, 2004, Exelon and PSEG Parent publicly announced that they had entered into a definitive merger agreement. The planned merger was anticipated to become effective after a series of regulatory approvals and a vote on the merger by the shareholders of both companies. The regulatory process was expected to take 12 to 15 months, after which the matter would be put to shareholders.

16. In preparation for the planned merger between Exelon and PSEG Parent, Exelon and PSEG Nuclear executed a Nuclear Operating Services Contract on or about December 20, 2004 (the "Nuclear Services Contract").

17. The Nuclear Services Contract called for Exelon to provide management services for plant operations at PSEG Nuclear's Salem Plant and Hope Creek Plant, using both Illinois employees and the Joliet Data Center, for a period of two years, with a potential three-year renewal. Further, the contract called for Exelon personnel, including Illinois employees, to work full and part time in the PSEG Nuclear organization and to implement the Exelon Nuclear Management Model.

### Use and Infringement of the Software at the Salem Plant and Hope Creek Plant

18. In connection with the plan set forth in the Nuclear Services Contract, Exelon copied and loaded a frontend component of Plaintiff's Software onto its laptop computers, using its Illinois employees, which Illinois employees then transported those computers to PSEG Nuclear's Salem Plant and Hope Creek Plant.

19. Exelon and/or PSEG Nuclear then used Plaintiff's Software, the frontend of which

4

had been copied onto those laptop computers, for inprocessing and badging of personnel for entry into PSEG Nuclear's Salem Plant and Hope Creek Plant.

20. Data received through the Software was then transmitted to a backend database component of the Software, residing on Exelon's computer(s) in a data center operated by Exelon and located in Joliet, Illinois ("the Joliet Data Center"). As a component of the Software, Plaintiff developed the customized backend software and database architecture used by Exelon to process and store the data at the Joliet Data Center.

21. On information and belief, Plaintiff's Software was first used at PSEG Nuclear's Salem Plant and Hope Creek Plant in early 2006. From that time, and at all times relevant hereto, data have been and are transmitted from copies of the Software frontend at Salem and Hope Creek to the Software backend at the Joliet Data Center, and from the backend located at the Joliet Data Center to copies of the frontend at Salem and Hope Creek, to implement data storage and updating functions.

22. On information and belief, Exelon and PSEG Nuclear continue to use Plaintiff's Software to inprocess and badge all personnel for access to the Salem Plant and Hope Creek Plant, including personnel seeking admission to the premises for the upcoming fall 2007 scheduled outage.

23. On further information and belief, Exelon and PSEG Nuclear continue to use, on a continuous basis, Plaintiff's Software to inprocess all new and returning personnel, and to maintain the random drug testing program requirement required by the United States Nuclear Regulatory Commission ("NRC"). For example, a weekly testing list for PSEG Nuclear's personnel is pulled by the corporate office at Exelon and transmitted to PSEG Nuclear for collection.

5

24. On information and belief, Exelon and PSEG Nuclear use Plaintiff's Software for purposes of complying with state and federal statutes, and particularly to comply with regulations issued by the NRC, pertaining to security at nuclear facilities.

25. On further information and belief, the planned merger between Exelon and PSEG Parent never came to fruition.

26. Nonetheless, as of the date of this Complaint, PSEG Nuclear continues to use Plaintiff's Software on Exelon computers at the Salem Plant and the Hope Creek Plant, and continues to transmit data to and receive data from the backend of the Software residing on Exelon's computers in the Joliet Data Center.

27. Plaintiff never authorized Exelon to transfer the Software to PSEG Nuclear for use at the Salem Plant and the Hope Creek Plant. Specifically, Plaintiff never authorized Exelon to: (a) copy the frontend of the Software onto multiple laptop computers for use by PSEG; (b) transport those copies of the Software to the Salem Plant and the Hope Creek Plant; (c) permit Exelon and PSEG Nuclear's employees to use the Software to inprocess and badge personnel at PSEG Nuclear's Salem Plant and Hope Creek Plant; (d) transmit data from said laptops using respective copies of the frontend of the Software to the backend of the Software at the Joliet Data Center, and (e) receive data by said laptops, using copies of the frontend of Plaintiff's Software, from the backend of the Software at the Joliet Data Center.

28. The above-referenced acts of Exelon and PSEG Nuclear were wrongful and clear violations of Plaintiff's rights under the Copyright Act and Plaintiff's License Agreement with Exelon.

29. As a direct and proximate result of the wrongful acts of Exelon and PSEG Nuclear, Plaintiff has suffered damages.

## COUNT I
## COPYRIGHT INFRINGEMENT

30. Plaintiff restates and incorporates by reference paragraphs 1 through 29 hereof, as though fully set forth herein.

31. Plaintiff is the owner of a valid and enforceable copyright in the Software.

32. Plaintiff's copyright is registered with the U.S. Copyright Office, effective May 21, 2007. *Ex. A*.

33. Plaintiff's copyright in the Software has been in force and effect at all times relevant to this Complaint.

34. Pursuant to 17 U.S.C. § 106, Plaintiff has a number of exclusive rights to do and authorize certain acts with respect to its Software, including but not limited to:

   a. Reproduce the Software in copies (17 U.S.C. § 106(1));

   b. Prepare derivative works based upon the Software (17 U.S.C. § 106(2)); and

   c. Distribute copies of the Software to the public by sale or other transfer of ownership, or by rental, lease, or lending (17 U.S.C. § 106(3)).

35. Pursuant to 17 U.S.C. § 501, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by section[] 106 . . . is an infringer of the copyright or right of the author, as the case may be." *Id.*

36. Exelon infringed Plaintiff's copyright in the Software by, *inter alia*:

   a. Reproducing the Software without Plaintiff's permission onto computers which were then transported to PSEG Nuclear's Salem Plant and Hope Creek Plant;

   b. Distributing copies of the Software to PSEG Nuclear without Plaintiff's

7

permission by loading copies of the Software onto laptop computers and which were then provided to PSEG Nuclear for PSEG Nuclear's use at its Salem Plant and Hope Creek Plant; and

c. Impermissibly using Plaintiff's Software to transmit, receive, and process data for PSEG Nuclear at the Joliet Data Center without Plaintiff's permission.

37. Pursuant to 17 U.S.C. § 504(a), Plaintiff is entitled to recover its actual damages and any additional profits of Exelon.

38. Plaintiff suffered actual damages as a direct and proximate result of Exelon's infringement of Plaintiff's copyright in the Software, including but not limited to lost profits from sales and service relating to use of the Software at the Salem Plant and the Hope Creek Plant.

WHEREFORE, the Plaintiff AnnaZach Software, Inc. respectfully prays that the Court enter judgment in its favor and against the above-captioned defendants:

(a) Awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, plus any additional profits of Exelon from its infringement of Plaintiff's copyright in the Software, pursuant to 17 U.S.C. § 504;

(b) Enjoining PSEG Nuclear and all of its agents, employees, successors, and assigns from using, reproducing, preparing derivative works of, and distributing copies of the Software, pursuant to 17 U.S.C. § 502;

(c) Pursuant to 17 U.S.C. § 502, enjoining Exelon, and all of its agents, employees, successors and assigns, from using, reproducing, preparing derivative works of, and distributing copies of the Software for the benefit of PSEG Nuclear or any other third party electric utility, or for any purpose other than for the operation of nuclear generating plants wholly owned and controlled by Exelon;

(d) Pursuant to 17 U.S.C. § 502, enjoining Exelon to erase all data from the backend of Plaintiff's Software, where such data do not pertain to nuclear generating plants wholly owned and controlled by Exelon;

(e) Pursuant to 17 U.S.C. § 503, impounding all copies of the Software or any component thereof being used by, in the possession, custody, or control of PSEG Nuclear, and/or any of their agents, employees, successors and assigns, and all copies of the Software or any component thereof which now are or have been at the Salem or Hope Creek Plants, including but not limited to all equipment and media upon which said Software is stored; and

(f) Granting such other and further relief as the Court deems just and equitable.

## COUNT II
## BREACH OF CONTRACT

39. Plaintiff restates and incorporates by reference paragraphs 1 through 38 hereof, as though fully set forth herein.

40. The License Agreement is a valid and enforceable contract between Plaintiff and Exelon.

41. Plaintiff performed all of its obligations under the License Agreement.

42. Exelon materially breached the License Agreement by, *inter alia*:

   a. Using the Software other than at Exelon Corporation;

   b. Using the Software at PSEG Nuclear's facilities and for the benefit of PSEG Nuclear; and

   c. Renting and/or leasing the Software to PSEG Nuclear.

43. Plaintiff suffered damages as direct and proximate result of Exelon's material breaches of the License Agreement.

WHEREFORE, the Plaintiff AnnaZach Software, Inc. respectfully prays that the Court

enter judgment in its favor and against the above-captioned defendants:

(a) Awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, plus any additional profits of Exelon from its breach of the License Agreement;

(b) Enjoining PSEG Nuclear, and all of its agents, employees, successors, and assigns from using, reproducing, preparing derivative works of, and distributing copies of the Software;

(c) Enjoining Exelon and all of its agents, employees, successors and assigns from using, reproducing, preparing derivative works of, and distributing copies of the Software for the benefit of PSEG Nuclear or for any other third party electric utility, or for any purpose other than for the operation of nuclear generating plants wholly owned and controlled by Exelon;

(d) Enjoining Exelon to erase all data from the backend of Plaintiff's database, where such data do not pertain to nuclear generating plants wholly owned and operated by Exelon;

(e) Impounding all copies of the Software being used by, or in the possession, custody, or control of PSEG Nuclear, and/or any of their agents, employees, successors, and assigns, including but not limited to all equipment and media upon which the Software is stored;

(f) Impounding all copies of the Software or components thereof in the possession, custody or control of Exelon, where such copies or components thereof have been or are situated at the Hope Creek and Salem Plants, including but not limited to all equipment and media upon which said Software or components thereof is stored; and

(g) Granting such other and further relief as the Court deems just and equitable.

### COUNT III
### UNJUST ENRICHMENT

44. Plaintiff restates and incorporates by reference paragraphs 1 through 43 hereof, as though fully set forth herein.

45. PSEG Nuclear benefited from the use of Plaintiff's Software at PSEG Nuclear's

10

Salem Plant and Hope Creek Plant by Exelon and/or PSEG Nuclear.

46. Said benefit to PSEG Nuclear came at Plaintiff's detriment, and Plaintiff was not compensated for the benefit to PSEG Nuclear.

47. PSEG Nuclear's retention of the benefit of use of Plaintiff's Software at the Salem Plant and Hope Creek Plant without compensation to Plaintiff violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, the Plaintiff AnnaZach Software, Inc. respectfully prays that the Court enter judgment in its favor and against the above-captioned defendants:

(a) Awarding to Plaintiff money damages in an amount equal to Plaintiff's actual damages, plus any additional profits of PSEG Nuclear from the use of the Software;

(b) Enjoining Exelon, PSEG Nuclear, and all of their agents, employees, successors, and assigns from using, reproducing, preparing derivative works of, and distributing copies of the Software;

(c) Impounding all copies of the Software or components thereof in the possession, custody, or control of PSEG Nuclear, and/or any of its agents, employees, successors, and assigns, including but not limited to all equipment and media upon which the Software is stored;

(d) Enjoining Exelon to erase all data from the backend of Plaintiff's Software, where such data do not pertain to nuclear generating plants wholly owned and controlled by Exelon;

(e) Enjoining Exelon, and all of its agents, employees, successors and assigns, from using, reproducing, preparing derivative works of, and distributing copies of the Software for the benefit of PSEG Nuclear or for any purpose other than for the purpose of operating nuclear generating plants wholly owned and controlled by Exelon; and

(f)　　Granting such other and further relief as the Court deems just and equitable.

         Respectfully Submitted,

         ANNAZACH SOFTWARE, INC.

    By:  _____
         MOMKUS McCLUSKEY MONROE MARSH &
         SPYRATOS, LLC

James S. Harkness, Esq. (ARDC: 6237256)
Jefferson F. Perkins, Esq. (ARDC 6184458)
David M. Madden, Esq. (ARDC: 6280517)
MOMKUS McCLUSKEY MONROE MARSH & SPYRATOS, LLC
3051 Oak Grove Road, Suite 220
Downers Grove, IL 60515-1181
(630) 434-0400; (630) 434-0444 Fax
Attorneys for Plaintiff

\\NTserver3\wp_data\26_59\30124.000001 AnnaZach Software\Pleadings\Complaintfinal.doc

12

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TXu 1-357-960**

EFFECTIVE DATE OF REGISTRATION

5 / 21 / 07
Month / Day / Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼
Integrated Nuclear Security System

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2a** NAME OF AUTHOR ▼
AnnaZach Software, Inc.

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ US
    { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**2b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
    { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**2c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
    { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
2002 * 2003 ◀ Year    This information must be given in all cases.

**3b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶    Day ▶    Year ▶    ◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
AnnaZach Software, Inc.

APPLICATION RECEIVED
MAY 2 1 2007
ONE DEPOSIT RECEIVED
MAY 2 1 2007
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

---

MORE ON BACK ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions.  • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

\* Amended by C.O. from email from Jefferson Perkins on 6/27/07.

| EXAMINED BY | FORM TX |
|---|---|
| CHECKED BY | |
| ☐ CORRESPONDENCE Yes | FOR COPYRIGHT OFFICE USE ONLY |

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▶         Year of Registration ▶

**5**

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

a

Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b

**6**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                         Account Number ▼

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

Jefferson Perkins, Esq.
3051 Oak Grove Road, Suite 220
Downers Grove, IL 60515

b

**7**

Area code and daytime telephone number ▶ (630) 434-0400 extension 163    Fax number ▶ (630) 434-0444
Email ▶ jperkins@momlaw.com

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  AnnaZach Software, Inc.
      Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Jefferson Perkins                                              Date ▶ 15 May 2007

Handwritten signature ▽ *[signature: Jefferson Perkins]*

| Certificate will be mailed in window envelope to this address: | Name ▼ Jefferson Perkins, Esq. | YOU MUST:<br>• Complete all necessary spaces<br>• Sign your application in space 8 |
|---|---|---|
| | Number/Street/Apt ▼ 3051 Oak Grove Road, Suite 220 | SEND ALL 3 ELEMENTS IN THE SAME PACKAGE<br>1. Application form<br>2. Nonrefundable filing fee in check or money order payable to *Register of Copyrights*<br>3. Deposit material |
| | City/State/Zip ▼ Downers Grove, IL 60515 | MAIL TO:<br>Library of Congress<br>Copyright Office<br>101 Independence Avenue SE<br>Washington, DC 20559-6222 |

**9**

\*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration, provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form TX – Full  Rev: 11/2006  Print: 11/2006 — 30,000  Printed on recycled paper                              U.S. Government Printing Office: 2006-xxx-xxx/60,xxx

# EXHIBIT B

INSS Software
ANNAZACH Software, INC.

1. LICENSE. ANNAZACH Software, INC. hereby grants to you a non-exclusive perpetual site license for the INSS software program at Exelon Corporation.

2. COPYRIGHT AND OWNERSHIP. The software and documentation are owned by ANNAZACH Software, INC. and are protected by the United States copyright laws and international treaty provisions. You acquire only the right to use the Software and Documentation and do not acquire any rights of ownership in the Software and Documentation or the media on which they are provided.

3. OTHER RESTRICTIONS. You may not rent or lease the Software.

4. LIMITED WARRANTY AND LIABILITY. ANNAZACH Software, INC. warrants that the Software, as updated and when properly used, will operate in all material respects in conformity with the published specifications of ANNAZACH Software, INC. In the event of a failure to meet the foregoing limited warranty, your remedy in the event of nonconformity of the Software, shall be the replacement of defective code or a refund of the license fee paid for the Software. This choice of remedy will only apply during the first 30 days of use. In the event that you choose a refund of the license fee paid for the Software, all copies of the Software and Documentation will be destroyed immediately. After 30 days of use your sole remedy shall be the replacement of defective code.

   IN NO EVENT WILL ANNAZACH Software, INC. BE LIABLE FOR ANY LOSS OR INACCURACY OF DATA, LOSS OF PROFITS OR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES. ANNAZACH Software, INC.'s TOTAL LIABILITY, IF ANY, ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL NOT EXCEED THE LICENSE FEES PAID BY YOU FOR THE SOFTWARE.

5. MAINTENANCE AGREEMENT. If you elect the option for a maintenance agreement, that agreement will begin 30 days after the initial installation of the Software and will run for a full year from that date. If you elect to cancel the maintenance agreement for the following year you must notify ANNAZACH Software, INC. in writing to that effect one month before the current agreement will expire. Otherwise, the maintenance agreement will be automatically renewed for another year.

6. GOVERNING LAW; COMPLETE AGREEMENT. THIS AGREEMENT CONSTITUTES THE COMPLETE AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SOFTWARE LICENSE AND IS GOVERNED BY THE LAWS OF THE COMMONWEALTH OF VIRGINIA. If any provision of this Agreement is held to be unenforceable, such provision shall be limited, modified or severed as necessary to eliminate its unenforceability, and all other provisions shall remain unaffected.

7. WAIVERS. The failure or delay of either party to exercise any of its rights shall not be deemed a waiver thereof and no waiver by either party of any breach of this Agreement shall constitute a waiver of any other or subsequent breach.

David Lannes – President of AnnaZach Software
October 26, 2000